UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TOWN OF PORTSMOUTH, RHODE ISLAND,   :
                                   :
             Plaintiff,                :
                                   :
         vs.                     :      C.A. No. 19-189
                                   :
PETER ALVITI, JR. in his official capacity as  :
Director of the Rhode Island Department of  :
Transportation, RHODE ISLAND DEPARTMENT :
OF TRANSPORTATION, CARLOS MACHADO  :
in his official capacity as Division Administrator :
of the Federal Highway Administration,    :
BRANDYE HENDRICKSON, in her official  :
capacity as Deputy Administrator of the Federal :
Highway Administration, FEDERAL HIGHWAY :
ADMINISTRATION, BUDDY CROFT in his  :
official capacity as Executive Director of the  :
Rhode Island Turnpike and Bridge Authority, and :
RHODE ISLAND TURNPIKE AND BRIDGE  :
AUTHORITY,                        :
                                 :
            Defendants.        :

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION AND FOR DECLARATORY, INJUNCTIVE AND FURTHER RELIEF

### Introduction

1.     Plaintiff, the Town of Portsmouth, Rhode Island ("Plaintiff", "Portsmouth" or the "Town"), brings this action pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, for judicial review of a final agency action of the Federal Highway Administration ("FHWA") and for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Portsmouth challenges the FHWA's unlawful granting of federal approval to the State of Rhode Island and its agencies for the imposition of tolls on the Sakonnet River Bridge, in violation of 23 U.S.C. § 301 of the Federal-Aid Highway Act ("FAHA") and in violation of the National Environmental

Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA") and applicable regulations.  Plaintiff also seeks injunctive relief to prohibit any future implementation of tolls pursuant to the FHWA's unlawful approval.

### Parties

2.      Plaintiff, the Town of Portsmouth, Rhode Island is a municipal corporation in Newport County of the State of Rhode Island.

3.      Defendant Peter Alviti, Jr., is Director of the Rhode Island Department of Transportation ("RIDOT").

4.      Defendant RIDOT is a department of state government of the State of Rhode Island.

5.      Defendant Carlos Machado is Division Administrator of the Federal Highway Administration ("FHWA") in Rhode Island.

6.      Defendant Brandye Hendrickson is Deputy Administrator of the FHWA in Washington, DC.  Deputy Administrator Hendrickson is the FHWA's highest-ranking official and is charged with the supervision and management of all decisions and actions of that agency.

7.      Defendant FHWA is a federal agency within the U.S. Department of Transportation.

8.      Defendant Buddy Croft is Executive Director of the Rhode Island Turnpike and Bridge Authority ("RITBA").

9.      Defendant RITBA is a body corporate and politic created pursuant to Chapter 24-12 of the Rhode Island General Laws.

**Jurisdiction and Venue**

10.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11.    This Court has authority to review the FHWA's actions and decisions and to issue the requested declaratory and injunctive relief pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 2201-2202.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**Factual and Legal Background**

13.    RIDOT is the state agency responsible for the maintenance and construction of highways, bridges, roads, and the like in the State of Rhode Island. RIDOT engages in public works projects funded through both State revenue sources and federal assistance, including funds from the FHWA. Typically, FHWA provides approximately eighty percent (80%) of the funding for federal-oversight transportation projects on which it concurs, with the State supplying the remaining twenty percent (20%).

14.    The former Sakonnet River Bridge was a four-lane truss bridge built and opened in 1956, and carrying traffic between the Towns of Portsmouth and Tiverton, Rhode Island.  The former Sakonnet River Bridge was at all times a toll-free facility.

15.    In or about 1999, FHWA as the lead federal agency and RIDOT as the project sponsor began the "Sakonnet River Bridge Rehabilitation or Replacement Project" (the "Project") and, in connection with that Project, initiated the review of potential environmental impacts, as required by NEPA and applicable regulations.

3

16.     23 U.S.C. § 301 of the FAHA, entitled "Freedom from tolls" provides:

"Except as provided in section 129 of this title with respect to certain toll bridges and toll

tunnels, all highways constructed under the provisions of this title shall be free from tolls

of all kinds."

17.     During the planning process for the new Sakonnet River Bridge project,

23 U.S.C. § 129 of the FAHA provided:

**§129. Toll roads, bridges, tunnels, and ferries**
    (a) Basic Program.—
        (1) Authorization for federal participation.—Notwithstanding
    section 301 of this title and subject to the provisions of this section,
    the Secretary shall permit Federal participation in—
        (A) initial construction of a toll highway, bridge, or tunnel
    (other than a highway, bridge, or tunnel on the Interstate System)
    or approach thereto;
        (B) reconstructing, resurfacing, restoring, and rehabilitating a
    toll highway, bridge, or tunnel (including a toll highway, bridge, or
    tunnel subject to an agreement entered into under this section or
    section 119(e) as in effect on the day before the date of the
    enactment of the Intermodal Surface Transportation Efficiency Act
    of 1991) or approach thereto;
        (C) reconstruction or replacement of a toll-free bridge or tunnel
    and conversion of the bridge or tunnel to a toll facility;
        (D) reconstruction of a toll-free Federal-aid highway (other
    than a highway on the Interstate System) and conversion of the
    highway to a toll facility; and
        (E) preliminary studies to determine the feasibility of a toll
    facility for which Federal participation is authorized under
    subparagraph (A), (B), (C), or (D);

        on the same basis and in the same manner as in the construction of free
        highways under this chapter.

(As a result of statutory amendments enacted in 2012, subsection (C) of 23 U.S.C.

§129(a)(1), relating to "reconstruction or replacement of a toll-free bridge or tunnel and

conversion of the bridge or tunnel to a toll facility", was re-lettered as subsection (E).

There was no substantive change to this statutory provision.)

4

18.     NEPA requires the formulation of a detailed environmental impact statement (EIS) for all "major Federal actions significantly affecting the quality of the human environment…." 42 U.S.C. § 4332(C).

19.     One of NEPA's primary purposes is to insure fully informed decision-making.  40 C.F.R. § 1500.1(b), (c).  NEPA requires that accurate "environmental information is available to public officials and citizens before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b).  "The information must be of high quality."  *Id.*  NEPA requires adequate disclosure of all environmental impacts, including social and economic impacts, and specifically requires federal agencies to discuss the direct, indirect and cumulative impacts of their proposed actions.  40 C.F.R. §§ 1501.2(b), 1508.7, 1508.8.

20.     In addition, 23 U.S.C. § 109(h) of the FAHA requires that the "possible adverse economic, social, and environmental effects relating to any proposed project on any Federal-aid system [be] fully considered in developing such project," and that "the final decisions on the project [be] made in the best overall public interest, taking into consideration the need for fast, safe and efficient transportation, public services, and the cost of eliminating or minimizing such adverse effects."  To that end, FHWA regulations set forth requirements under NEPA and § 109(h) for the processing of highway and urban mass transportation projects.  23 C.F.R. § 771.101.  Those regulations require FHWA to perform § 109(h) analyses as part of the NEPA process.  *Id.*; § 771.105.  As part of its NEPA review, FHWA must evaluate alternative courses of action and make decisions "in the best overall public interest based upon a balanced consideration of the need for safe and efficient transportation; of the social, economic, and environmental impacts of the

5

proposed transportation improvement; and of national, State, and local environmental

protection goals." *Id.*; § 771.105(b).

21.     40 C.F.R. § 1502.9 of the Council on Environmental Quality (CEQ)

regulations governs the preparation of draft, final and supplemental environmental

statements under NEPA.  This regulation requires that:

> (c)  Agencies:
> (1)  Shall prepare supplements to either draft or final environmental
> impact statements if:
> (i)  The agency makes substantial changes in the proposed action that are
> relevant to the environmental concerns; or
> (ii)  There are significant new circumstances or information relevant to the
> environmental concerns and bearing on the proposed action or its impacts.

22.     In addition, 23 C.F.R. § 771.130 of the FHWA regulations, entitled

"Supplemental environmental impact statements," provides:

> (a) A draft EIS, final EIS, or supplemental EIS may be supplemented at
> any time.  An EIS shall be supplemented whenever the Administration
> determines that:
> (1)  Changes to the proposed action would result in significant
> environmental impacts that were not evaluated in the EIS; or
> (2)  New information or circumstances relevant to environmental concerns
> and bearing on the proposed action or its impacts would result in
> significant environmental impacts not evaluated in the EIS.

23.     23 C.F.R. § 771.129 of the FHWA regulations, entitled "Re-evaluations,"

provides:

> (a) A written evaluation of the draft EIS shall be prepared by the applicant
> in cooperation with the Administration if an acceptable final EIS is not
> submitted to the Administration within three years from the date of the
> draft EIS circulation. The purpose of this evaluation is to determine
> whether or not a supplement to the draft EIS or a new draft EIS is needed.
> (b) A written evaluation of the final EIS will be required before further
> approvals may be granted if major steps to advance the action (e.g.,
> authority to undertake final design, authority to acquire a significant
> portion of the right-of-way, or approval of the plans, specifications and
> estimates) have not occurred within three years after the approval of the

final EIS, final EIS supplement, or the last major Administration approval or grant.

(c) After approval of the ROD, FONSI, or CE designation, the applicant shall consult with the Administration prior to requesting any major approvals or grants to establish whether or not the approved environmental document or CE designation remains valid for the requested Administration action. These consultations will be documented when determined necessary by the Administration.

24.   On June 21, 2001, RIDOT and FHWA jointly issued the Draft Environmental Impact Statement ("DEIS") for the Project, pursuant to NEPA.  The 2001 DEIS identified tolls as a potential means to generate revenues for construction and maintenance of the completed bridge.  The DEIS did not include a Section 109(h) analysis and did not consider, discuss or evaluate the social or economic impacts of imposing tolls on the new Sakonnet River Bridge.  The DEIS was followed by a public comment period and a public hearing on the DEIS and the proposed tolls.

25.   In April 2003, RIDOT and FHWA issued their Final Environmental Impact Statement ("FEIS").  At the direction of the then-Governor, Donald L. Carcieri, RIDOT and FHWA eliminated tolling of the new bridge from further consideration.

26.   In August 2003, the FHWA issued its official Record of Decision ("ROD") for the Project.  A copy of the August 2003 ROD is attached hereto as Exhibit A and incorporated herein by reference.

27.   The 2003 ROD stated that the 2001 DEIS:

…was widely circulated for public review and comment.  A Public Hearing on the DEIS was held September 6, 2001 in Portsmouth, RI.  The Hearing attracted a large audience, whose commentary was overwhelmingly against tolling and the toll facilities.  The position is also supported by the governor's office. [Section 2.0, p. 5.] … Since there was strong public opposition to tolling as demonstrated through public hearing comments, additional financing options have been identified in the FEIS.  The use of toll collections as a finance means has been eliminated from further consideration at the direction of the Governor of the State of Rhode Island." [Section 9.0, p. 13]

7

28.     RIDOT's acting Director James Capaldi explained at that time that the proposed tolls "would have caused delays in federal approval of the state's Environmental Impact Statement, or EIS, on the project…. Not only would it have added nearly $20 million to the project's [then-estimated] $108 million cost, but it would have required the state to deal with serious environmental issues and reply to mountains of objections from local officials and residents who were opposed to a toll…. 'If we take the tolls out of the option, I'll be able to accelerate my EIS (review),' Capaldi said." *The Newport Daily News*, March 5, 2003 (Exhibit A to plaintiff's memorandum in support of its motion for a preliminary injunction).

29.     The environmental issues, concerns and comments raised by the public were never disclosed, assessed, considered, or responded to in a Final Environmental Impact Statement, as required by NEPA. *See* 40 C.F.R. 1503.4 (agency must summarize and respond to comments submitted on the draft EIS).

30.     The FHWA's decision, as stated in the August 2003 ROD, was "to adopt the recommended Build Alternative 5 (Bridge on South Alignment) as the proposed action for this project." Section 10.0, p. 16.

31.     The August 2003 ROD was the final agency decision with regard to the Sakonnet River Bridge Rehabilitation or Replacement Project. The final decision of RIDOT and the FHWA was to construct a new Sakonnet River Bridge as a toll-free facility. With the issuance and recording of the ROD, the NEPA process for the Sakonnet River Bridge Rehabilitation or Replacement Project was concluded.

32.     Section 8 of Chapter 376 of the Rhode Island Public Laws of 2003, which enacted the state budget for FY 2003-2004, stated that it was "anticipated and estimated

8

that the State of Rhode Island will receive one hundred fifty two million dollars ($152,000,000) in grant funds from the Federal Highway Administration ("FHWA"), with the assistance of RIDOT in support of the implementation of the New Sakonnet Bridge; … The design, construction, equipping and completion of these improvements will be financed in whole or in part … through revenue bonds issued pursuant to the GARVEE Program…, and annual revenues for the operation and maintenance of the New Sakonnet Bridge … to be included in the annual operating budget of RIDOT…."

33.     Thereafter, over the next decade, in accordance with the August 2003 ROD and with 80% federal highway funding, the new Sakonnet River Bridge was designed, constructed, and officially opened to vehicular traffic in both directions on September 28, 2012 as a toll-free facility.

34.     During the timeframe of 2012 – 2013, RIDOT published a page on its website, entitled "Tolling Proposals in Rhode Island: Frequently Asked Questions," which conceded, with regard to the new Sakonnet River Bridge: "Over in East Bay, Rhode Island cannot institute a toll once construction of the new bridge is completed."

35.     In 2012, RIDOT requested additional funding from FHWA to conduct a Supplemental Environmental Impact Statement (SEIS) for the Project to consider the addition of tolls to the new Sakonnet River Bridge and the potential impacts from tolls.

36.     Despite RIDOT's acknowledgement of the need to conduct a Supplemental Environmental Impact Statement (SEIS), no SEIS was ever prepared for the Project.

37.     Under 23 U.S.C. § 601(a), the term "substantial completion" is defined as meaning *the opening of a project to vehicular or passenger traffic…."*

38.     Under 23 U.S.C. § 129(a), "[t]he term 'initial construction' means the construction of a highway, bridge, tunnel, or other facility at any time before it is *open to traffic*…. The term 'initial construction' does not include any improvement to a highway, bridge, tunnel, or other facility after it is *open to traffic*."

39.     On September 28, 2012, the new Sakonnet River Bridge had reached "substantial completion" as defined by 23 U.S.C. § 601(b).  The former Sakonnet River Bridge was closed and scheduled for demolition.  The decision reached by RIDOT and FHWA in 2003 and officially documented in the 2003 ROD, to construct a new Sakonnet River Bridge as a toll-free facility, was fully implemented.

40.     In January 2013, during the administration of then-Governor Lincoln Chafee, RIDOT submitted a "Final Environmental Impact Statement Reevaluation" to FHWA.  RIDOT requested that the FHWA reverse the 2003 ROD (which had eliminated tolls) and, instead, grant federal authorization for the state to impose a toll on the new Sakonnet River Bridge.

41.     A reevaluation under 23 C.F.R. § 771.129 allows the FHWA in appropriate circumstance to consider whether an aging NEPA EIS document concerning a proposed action or project remains current and valid, or if changed circumstances or conditions require an existing EIS document to be supplemented and updated.

42.     A reevaluation is not a recognized part of the NEPA process, it is not a NEPA document, and it is not an acceptable or legal substitute for the preparation of an EIS.

43.     The Final EIS Reevaluation Report issued on January 31, 2013, which purported to be a reevaluation pursuant to 23 C.F.R. § 771.129(c), did not address or

consider whether the FEIS issued in April 2003 for the Sakonnet River Bridge Rehabilitation or Replacement Project remained current and valid or whether the FEIS needed to be supplemented or updated.

44.     The April 2003 FEIS continued to be a valid NEPA document, and it did not require a so-called "reevaluation" in 2013 when RIDOT prepared one at the direction of FHWA, and it did not require supplementation or updating.

45.     The Final EIS Reevaluation Report, while not a NEPA document, nevertheless purported to serve as a substitute for a Final EIS under NEPA.  RIDOT's report, in essence, simply noted that the State passed legislation in 2012 authorizing transfer of the new Sakonnet River Bridge from RIDOT to RITBA and authorizing RITBA to charge tolls on the new bridge, and it considers only two alternatives: Alternative 1, a "No Build (No Toll)" alternative, which summarily assumed that, in the absence of tolling, the State would not provide the funding needed for RIDOT to maintain the new bridge properly and adequately; and Alternative 2, involving the implementation of an All Electronic Toll Collection (AETC) system, an option that was not considered in any FEIS or SEIS for the Project.

46.     The Final EIS Reevaluation Report could not be deemed to be a proper and valid EIS document under the NEPA process, because it failed to "study, develop, and describe appropriate alternatives to recommended courses of action" as required by 42 U.S.C. § 4332(E) and failed to "[r]igorously explore and objectively evaluate all reasonable alternatives" and otherwise comply with 40 C.F.R. § 1502.14.  In addition, the report included false representations and assumptions regarding the initial tolling

rates to be charged, and failed to consider or assess the cumulative impacts of reasonably foreseeable future increases in the toll rates charged.

47.     Even if the final agency decision reflected in the 2003 FEIS and 2003 ROD, to eliminate tolls from further consideration and to build a new Sakonnet River Bridge as a toll-free facility, could be revisited and reversed a decade later in 2013, after the replacement bridge had been substantially completed and opened to traffic as a toll-free facility, RIDOT and FHWA would be required to prepare, circulate, and file a Supplemental EIS in the same manner as draft and final EISs, including compliance with all requirements regarding public involvement, comment and hearings.

48.     RIDOT and FHWA did not circulate a draft of the Final EIS Revaluation Report for public involvement, review and comment prior to issuing the report on January 31, 2013.

49.     RIDOT and FHWA never took any action towards preparation of a supplemental FEIS for the Sakonnet River Bridge Rehabilitation or Replacement Project pursuant to the procedural requirements of NEPA and applicable federal regulations.

50.     The reevaluation of the FEIS conducted by RIDOT and the Final EIS Reevaluation Report issued on January 31, 2013, and the Revised ROD issued by FHWA on April 22, 2013, did not comply with NEPA and applicable federal regulations and they were, and continue to be, in violation of law.

51.     In the event that this Court were to determine that RIDOT and FHWA had the legal authority in 2013 to re-open the NEPA process in order to reverse the final agency decision reached in the 2003 FEIS and 2003 ROD, which eliminated tolls from further consideration, then RIDOT and FHWA would have been required to initiate and

follow the process for a supplemental FEIS pursuant to NEPA and 40 C.F.R. § 1502.9, and during such process they would have been required to evaluate and consider all reasonable alternatives to tolling the new Sakonnet River Bridge, and would have been required to comply with all the "public involvement" procedures required by 40 C.F.R. § 1506.6.  In addition, if such process eventually were to lead to the issuance of a supplemental FEIS recommending tolls as the "new" preferred alternative, FHWA would then have been required to issue a revised ROD officially documenting its decision to reverse and replace the final agency decision reached in 2003, and it would have been required to record such a revised ROD with the Federal Register.

52.     On March 15, 2013, Portsmouth sent a letter (signed by its Town Council President and Town Administrator) to RIDOT and FHWA stating the Town's positions: (1) that the imposition of any toll would be illegal and prohibited under § 301 of the FAHA because the bridge was an existing toll-free facility that had been completed and open to traffic since September of 2012; and (2) that the process the federal and state agencies had employed to pursue tolling was legally deficient and failed to comply with the requirements of NEPA and applicable federal regulations.  A copy of the Town's March 15, 2013 letter is attached hereto as Exhibit B and incorporated herein by reference.  Neither FHWA nor RIDOT responded to the Town's letter.

53.     On April 17, 2013, RIBTA established the initial tolling rates for the bridge, and announced its intention to proceed with construction of a $2.2 million All Electric Tolling System and start charging tolls by the beginning of July of 2013.   The initial toll rates established by RITBA were:  drivers with Rhode Island E-Z Pass transponders would pay $0.75 per trip; drivers with out-of-state transponders would be

13

charged $3.75 per trip; and drivers without transponders would be charged $5.25 per trip. RIDOT's reevaluation report noted that "[f]uture toll rates will ultimately be established by the RITBA Board of Directors."

54.     On April 22, 2013, FHWA through Daniel J. Berman, FHWA Acting Division Administrator for Rhode Island, issued a Revised Record of Decision ("Revised ROD") for the Sakonnet River Bridge Rehabilitation or Replacement Project.  As RIDOT had requested, FHWA reversed its 2003 ROD which had officially eliminated and precluded a toll on the new replacement bridge, and it granted the State of Rhode Island and its agencies the requisite federal authority to impose a toll.  FHWA did not consider or address in any fashion the legal positions raised by Portsmouth over a month earlier in its March 15, 2013 letter.  A copy of the April 22, 2013 Revised ROD is attached hereto as Exhibit C and incorporated herein by reference.

55.     On April 23, 2013, Portsmouth commenced a civil action in the U.S. District Court for the District of Rhode Island, captioned *Town of Portsmouth, Rhode Island v. Michael P. Lewis, et al.* (C.A. No. 13-267-L), in which Portsmouth challenged the legality of the tolls and sought declaratory, injunctive and other relief.

56.     Portsmouth alleged in its complaint, *inter alia*, that Town of Portsmouth, Rhode Island and its residents, citizens and businesses would suffer substantial and irreparable injury and harm if tolls are imposed on the new Sakonnet River Bridge. RIDOT's own reevaluation report projected that imposition of tolls will cause a significant reduction in trips to the Town, commuter spending, and tax collections and revenues to the Town.  Section 6.2.2.  RIDOT stated that "[t]he impact to public and private school departments and municipalities that use the Sakonnet River Bridge [which

14

includes the Town of Portsmouth] as a result of tolls will be financial.  These entities may need to include funding for tolls as part of their annual budget." Pages 6-2 and 6-3.  As noted by the Newport County Chamber of Commerce, instituting tolls on the new Sakonnet River Bridge will negatively impact all Rhode Island residents and businesses by increasing the cost of living and of doing business in Newport County and the East Bay, by:  increasing the cost of goods and services to Aquidneck Island and the East Bay; increasing the cost of doing business to all Aquidneck Island businesses; increasing the cost to commuters who travel over the bridge; increasing the cost of compensation and recruitment for employers seeking qualified candidates from Southeastern New England; and decreasing the competitive position of the Town of Portsmouth and neighboring communities in preparation for an anticipated Base Realignment and Closure (BRAC) process by increasing the commuter cost for the Defense industry including Raytheon, NUWC and Naval Station Newport employees who commute over the bridge.   The imposition of tolls will cause significant social, economic and fiscal harm to the Town, its local businesses, the local tourism industry, and to all citizens of the Town whose lives will be severely impacted and disrupted and whose rights to travel will be restricted and violated, and will cause similar harm to neighboring and nearby communities, residents and businesses on Aquidneck Island, in Newport County, in Bristol County, and in southeastern Massachusetts.

57.     Portsmouth further alleged in its complaint that the Town would itself incur the cost of such tolls by various Town officials and employees using the Sakonnet River Bridge in the regular and ordinary course of their employment with the Town.  In addition, the imposition of tolls would cause many motorists travelling northbound to exit

15

the Town via the Mount Hope Bridge, rather than the Sakonnet River Bridge, in order to avoid incurring tolls. A significant volume of traffic would be rerouted onto Boyd's Lane, Turnpike Avenue, and Bristol Ferry Road. These are secondary roads in residential areas, whose infrastructure is insufficient to support such an increase in traffic. This would result in congestion and stalled traffic, which would negatively impact air quality, the beauty and aesthetics of these areas, the quiet, the peaceful and serene character of the affected neighborhoods, and the quality of life for the residents of Portsmouth. This would increase the risk of motor vehicle accidents and injuries to motorists, passengers and pedestrians, and would impede and impair the ability of Town police, fire and rescue personnel to respond promptly and adequately to emergency calls, and to transport individuals to area hospitals for emergency treatment and care. All of the above would be substantially detrimental to the public health, welfare and safety of Portsmouth and its residents and visitors.

58.    The Town of Tiverton and the Town of Bristol filed a joint motion to intervene in the pending litigation.

59.    Portsmouth moved that the district court issue a temporary restraining order and a preliminary injunction to prevent implementation of the tolls, which the court denied.

60.    In opposing a preliminary injunction, defendants argued that tolls would result in no irreparable harm. They submitted an Affidavit of Buddy Croft, RITBA's executive director, who represented under oath that RITBA could easily determine every account paying such tolls, and provide a refund of all tolls collected if the toll was later determined by the Court to be illegal. Defendants suggested that restitution and

16

disgorgement of tolls was an appropriate alternative to the granting preliminary injunctive relief.

61.    On May 7, 2013, the Governor of the State of Rhode Island executed a Certificate of Transfer of Real Property, certifying the transfer of the new Sakonnet River Bridge from RIDOT to RITBA.  The Public Notice of the transfer was given in the Providence Journal on May 31, 2013.  The filings of the records and documents with the appropriate Town Clerks were completed on June 4, 2013 (North Kingstown & Jamestown) and June 5, 2013 (Portsmouth & Tiverton).  All necessary documentation was filed with the Secretary of State as of June 5, 2013.

62.    In July 2013, the R.I. General Assembly amended R.I. Gen. Laws § 24-12-40.F, the statute which allowed RITBA to charge tolls on the Sakonnet River Bridge. This amendment delayed the commencement of tolls to August 19, 2013 and set the maximum toll at ten cents until April 1, 2014 (later extended to July 1, 2014) while a special legislative commission studied the issue.  On August 19, 2013, RITBA began charging and collecting the ten-cent tolls, but only from vehicles equipped with an EX-Pass transponder and registered for an EZ-Pass account.

63.    In June 2014, the R.I. General Assembly amended R.I. Gen. Laws § 24-12-40.F to provide that RITBA could no longer charge and collect tolls on the Sakonnet River Bridge after June 30, 2014.  RITBA discontinued collection of the 10-cent tolls on June 20, 2014, after it had charged and collected (over Portsmouth's objection) nearly $1 million in tolls, including tolls paid by the Town of Portsmouth for its officials and employees to cross the bridge in the course of Town business.  The Town sustained injury, damages and harm as a result of unlawful tolls.

64.     Based on the elimination of the tolls, the district court on the motion of defendants dismissed the case as moot.  Portsmouth appealed the dismissal to the U.S. First Circuit Court of Appeal (Case No. 15-1502).  The First Circuit affirmed the dismissal on grounds of mootness but, in so ruling, the Court of Appeals held that the action did not include a count or claim for judicial review of the FHWA's final agency action in question, i.e., the FHWA's April 22, 2013 Revised ROD granting federal authority for the State to impose tolls on the Sakonnet River Bridge.  *See Town of Portsmouth, Rhode Island v. Lewis, et al.*, 813 F.3d 54, 63-64 (1st Cir. 2016).

65.     On January 18, 2019, Portsmouth, through its Town Administrator Richard Rainer, wrote a letter to the FHWA, RIDOT and RITBA again challenging the legality of the FHWA's Revised ROD.  A copy of the Town's January 18, 2019 letter is attached hereto as Exhibit D and incorporated herein by reference.

66.     On March 7, 2019, FHWA Division Administrator Machado wrote a letter to Portsmouth Town Administrator Rainer, in which FHWA acknowledged that "neither the Legislature's action nor the court decision invalidated FHWA's 2013 ROD…. As the Rhode Island Department of Transportation (RIDOT) is the project sponsor and joint lead agency for the NEPA process, and have not requested FHWA rescind the Revised ROD, … FHWA will not do so unilaterally."  A copy of the Division Administrator Machado's March 7, 2019 letter is attached hereto as Exhibit E and incorporated herein by reference.

67.     On April 2, 2019, RIDOT Director Alviti wrote a letter to FHWA Division Administrator Machado, stating that RIDOT "hereby requests to formally rescind the Sakonnet River Bridge 2013 Revised ROD."  A copy of Director Alviti's letter is attached hereto as Exhibit F and incorporated herein by reference.

68.    As of this date, there has been no formal rescission of the April 22, 2013 Revised ROD and, therefore, the FHWA's grant of federal tolling authority to the State of Rhode Island and its agencies, as necessary to impose tolls on the Sakonnet River Bridge, remains in full force and effect.

69.    If the State of Rhode Island through its agencies RIDOT and/or RITBA reinstate tolls on the Sakonnet River Bridge based on the FHWA's unlawful grant of federal tolling authority pursuant to the April 22, 2013 Revised ROD, Portsmouth will sustain further injury, damages and harm.  Portsmouth is aggrieved by FHWA's action and decision in issuing the April 22, 2013 Revised ROD.

## COUNT I

### (VIOLATION OF 23 U.S.C. § 301 -- FREEDOM FROM TOLLS)

70.    Plaintiff repeats and incorporates herein by reference the allegations of paragraphs 1 through 69 of this complaint.

71.    The new Sakonnet River Bridge was planned, designed, constructed, substantially completed and opened to traffic by the public on September 28, 2012 as a toll-free facility, pursuant to the August 2003 ROD.

72.    The new Sakonnet River Bridge was planned, designed, and constructed with federal highway funds based on the representations and decisions stated in the August 2003 ROD.

73.    The new Sakonnet River Bridge, as an existing toll-free facility open to traffic by the travelling public, did not and does not qualify for the exception under 23 U.S.C. § 129 (a)(1)(E), or any other exception to the general prohibition of tolling pursuant to 23 U.S.C. § 301.

74.     The FHWA's action and decision in issuing the April 22, 2013 Revised ROD and granting federal authority to charge and collect tolls on the new Sakonnet River Bridge was unlawful and in violation of 23 U.S.C. § 129(a) and 23 U.S.C. § 301 and was: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law, and is reviewable under 5 U.S.C. §§ 701-706.

WHEREFORE, plaintiff Town of Portsmouth respectfully requests that this Court enter an order and judgment for plaintiff and against defendants, granting the following relief:

A.     Adjudge and declare that FHWA violated 23 U.S.C. § 129(a) and 23 U.S.C. § 301 in issuing the April 22, 2013 Revised ROD and granting federal authority for the State of Rhode Island and its agencies to impose tolls on the Sakonnet River Bridge;

B.     Adjudge and declare that the FHWA's action and decision in issuing the April 22, 2013 Revised ROD and approving and authorizing the imposition of tolls on the Sakonnet River Bridge was and is in violation of the freedom from tolls provision of 23 U.S.C. § 301, and that the actions of FHWA approving and authorizing the imposition of tolls was and is: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law;

C.     Vacate and set aside the April 22, 2013 Revised ROD;

D.      Enter appropriate injunctive relief to prevent and preclude further tolling of the Sakonnet River Bridge pursuant to the April 22, 2013 Revised ROD;

E.      Awarding damages and/or ordering the payment of restitution, reimbursement and/or disgorgement of tolls unlawfully charged and collected, together with prejudgment interest thereon, as "further relief" pursuant to 28 U.S.C. § 2202;

F.      Awarding plaintiff costs and reasonable attorneys' fees; and

G.      For such other and further relief as the Court deems just and appropriate under the circumstances.

## COUNT II
### (VIOLATION OF NATIONAL ENVIRONMENTAL POLICY ACT)

75.     Plaintiff repeats and incorporates herein by reference the allegations of paragraphs 1 through 74 of this complaint.

76.     Plaintiff alleges that the proposed Project that constituted the major federal action necessitating the NEPA process, which was conducted in 1999 – 2003 and resulted in the final agency decision documented in the August 2003 ROD, was already implemented and substantially completed on September 28, 2012 when the Sakonnet River Bridge was opened to vehicular traffic as a toll-free facility and, therefore, no reevaluation or supplemental EIS was proper thereafter.

77.     In the alternative, plaintiff alleges that the process utilized and followed in preparing and issuing the January 2013 Final EIS Reevaluation report was invalid, illegal and in violation of the requirements of NEPA, its implementing regulations, and other applicable regulations.

78.     The reevaluation of the FEIS conducted by RIDOT and the Final EIS Reevaluation Report issued on January 31, 2013, and the Revised ROD issued by FHWA on April 22, 2013, did not comply with NEPA and applicable federal regulations and were, and continue to be, in violation of law.

79.     FHWA's action and decision in issuing the April 22, 2013 Revised ROD and granting federal authority to charge and collect tolls on the new Sakonnet River Bridge was unlawful and in violation of NEPA and applicable regulations and was: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law, and is reviewable under 5 U.S.C. §§ 701-706.

WHEREFORE, plaintiff Town of Portsmouth respectfully requests that this Court enter an order and judgment for plaintiff and against defendants, granting the following relief:

A.     Adjudge and declare that FHWA violated NEPA and applicable regulations in issuing the April 22, 2013 Revised ROD and granting federal authority for the State of Rhode Island and its agencies to impose tolls on the Sakonnet River Bridge;

B.     Adjudge and declare that the FHWA's action and decision in issuing the April 22, 2013 Revised ROD and approving and authorizing the imposition of tolls on the Sakonnet River Bridge was and is unlawful and in violation of NEPA and applicable regulations and was and is: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and/or without observance of procedure required by law;

C.      Vacate and set aside the April 22, 2013 Revised ROD;

D.      Enter appropriate injunctive relief to prevent and preclude further tolling of the Sakonnet River Bridge pursuant to the April 22, 2013 Revised ROD;

E.      Awarding damages and/or ordering the payment of restitution, reimbursement and/or disgorgement of tolls unlawfully charged and collected, together with prejudgment interest thereon, as "further relief" pursuant to 28 U.S.C. § 2202;

F.      Awarding plaintiff costs and reasonable attorneys' fees; and

G.      For such other and further relief as the Court deems just and appropriate under the circumstances.

Plaintiff
TOWN OF PORTSMOUTH, RHODE ISLAND
By its Attorneys,


 /s/   *Kevin P. Gavin*
Kevin P. Gavin (R.I. Bar No. 2969)
Portsmouth Town Solicitor
Law Office of Kevin P. Gavin
31 Harrington Avenue
Portsmouth, RI  02871
401-683-2044
Email: kevingavinlaw@gmail.com


  /s/   *Terence J. Tierney*
Terence J. Tierney (R.I. Bar No. 2583)
Law Office of Terence J. Tierney
232 John Dyer Road
Little Compton, RI  02837
401-316-4566
Email:  tierneylaw@yahoo.com


Dated:  April 13, 2019

23